## 29618. COFFEY ENTERPRISES REALTY & DEVELOPMENT COMPANY, INC. v. HOLMES et al.

NICHOLS, Chief Justice.

In 1970, Louise Holmes bought described real estate from one Bill Sudderth. At the time the property was purchased there was an outstanding deed to secure debt issued by James W. Brown, a predecessor in title of Sudderth to Collateral Investment Company. Louise Holmes continued to make payments on the indebtedness secured by such deed to secure debt until approximately December, 1973. Thereafter, on June 4, 1974, after the advertisement of such property for four weeks the property was sold by Collateral Investment Company acting as agent for James W. Brown to Coffey Enterprises Realty & Development Company, Inc. In July, 1974, Louise Holmes brought the present action in which she sought to have such sale set aside. On the same date that service of process in this suit was perfected the complaint of Coffey Enterprises seeking a dispossessory warrant against Louise Holmes was filed in the State Court of Cobb County. Thereafter, an amendment to Louise Holmes' complaint was filed in which she sought to temporarily enjoin any further proceedings in the dispossessory warrant suit until such complaint was determined. A temporary restraining order was issued and thereafter Coffey Enterprises filed a motion for dissolution of her injunction, as well as other defenses to her complaint.

On August 22, 1974, the trial court, based upon a hearing previously had, overruled the motion of Coffey Enterprises Realty & Development Company, Inc. to dissolve the temporary restraining order, granted a temporary injunction and overruled the motion to dismiss the complaint. The appeal is from this judgment.

1. The complaint filed by Louise Holmes pre-dated the dispossessory warrant proceedings in the State Court of Cobb County. The dispute between Louise Holmes and Coffey Enterprises Realty & Development Company, Inc. as to right of possession alleged in the complaint and that

alleged in the dispossessory proceedings arose out of the same "transaction or occurrence." Under the Civil Practice Act (Ga. L. 1966, pp. 609, 625; Code Ann. § 81A-113 (a)) the defendant Coffey Enterprises Realty & Development Company, Inc. was required to raise the issue of right of possession in this litigation and could not raise it later in other litigation between the parties. Accordingly, the trial court did not err in enjoining the proceedings in the State Court of Cobb County.

2. The complaint attacks the constitutionality of the provisions of Ga. L. 1935, p. 381 (Code Ann. § 67-1506). Plaintiff also attacks the use of other provisions of the Georgia Code in that they fail to provide adequate notice and opportunity to be heard. The basis of the plaintiff's attack is that these Code sections permit the sale of real estate conveyed to secure a debt without a prior judicial determination of the debtor's liability.

This power of sale may not be utilized except under the provisions of a contract and if exercised the statute provides the manner in which such power is to be exercised. It is a purely contractual matter between two parties in the exercise of private property rights. There is insufficient meaningful government involvement to constitute state action by the mere adoption of statutes providing for the sale of real estate under powers contained in mortgages, debts, deeds or other lien contracts where the grant of such power is contained in the contract between the parties thereto. No government official or agency is involved in such process.

It would be unwise to require judicial approval prior to permitting the exercise of a contractual right prior to permitting such a sale to take place. It could ultimately lead to having every business transaction approved in an adversary court proceeding before it would be enforceable. If this should happen, the wheels of trade and commerce would grind to a halt and already congested court dockets would become completely unmanageable. It would be an insult to the public intelligence to require the government, through its courts, to become involved in all private affairs and require court approval for the exercise of rights under a private contract involving consenting adults as if they were minors or lunatics. Of course, the

courts are always open to an aggrieved party to correct an injustice caused by fraud. Compare *Kouros v. Sewell,* 225 Ga. 487 (169 SE2d 816).

"In a sense, the government is supportively involved in the existence of all rights enjoyed by private citizens; even without resort to the courts, the spectre of legal enforcement orders social interaction and assures respect by one person for the legally defined rights of the other. But if such involvement were to constitute 'state action,' there would scarcely be a realm of private action beyond the reach of the constitutional amendments, ..." 74 Col. L. Rev. 664, 665 (1974).

The insufficiency of state action under the provisions of Code Ann. § 67-1506, supra, is demonstrated by a review of cases dealing with the "self-help" repossession procedures authorized by commercial codes relating to chattels. See Adams v. Southern Cal. First Nat. Bank, 492 F2d 324 (1973) cert. den. Nov. 11, 1974, 43 USLW 3281; James v. Pinnix, 495 F2d 206 (1974); Brantley v. Union Bank &c. Co., 498 F2d 365 (1974), cert. den. Nov. 25, 1974, 43 USLW 3306.

Since no meaningful government involvement to constitute state action is involved, any contention that such statute violates the equal protection or due process provisions of the Constitution is without merit. See *Ruff v. Lee,* 230 Ga. 426 (197 SE2d 376); *National Community Builders v. C. & S. Nat. Bank,* 232 Ga. 594 (207 SE2d 510); Law v. U. S. Dept. of Agriculture, 366 FSupp 1233; and Global Industries, Inc. v. Harris, 376 FSupp. 1379 (1974).

3. The pleadings in this case disclosed that the plaintiff had been in possession of the property during the entire period covered by the controversy. The complaint also shows a refusal on the part of the grantee named in the deed to secure debt to provide the plaintiff with a "pay-off" figure until after the sale took place, although she was attempting to ascertain such figure so that the amount could be paid in full. The complaint also alleges an attempt on the part of the plaintiff, prior to seeking the "pay-off" figure, to forward checks for the then arrearage.

In *Berry v. Williams,* 141 Ga. 642 (81 SE 881), it was held: "1. A deed absolute in form may be shown to have been made to secure a debt, where the maker remains in

possession of the land. *Mercer v. Morgan,* 136 Ga. 632 (71 SE 1075).

"2. Actual possession is notice to the world of the right or title of the occupant. *Mercer v. Morgan,* supra; *Bridger v. Exchange Bank,* 126 Ga. 821 (56 SE 97, 8 LRA (NS) 463, 115 ASR 118); *Austin v. Southern Home &c. Assoc.,* 122 Ga. 439 (50 SE 382).

"3. Where the owner of land executes a deed of the character mentioned in the first note, and remains in possession of the land, and the grantee conveys the land to another who has no actual notice of the undisclosed agreement that the deed should operate as a security for debt, and who has made no inquiry of the occupant, the latter may pay or tender the amount of the debt to the first grantee and maintain an equitable action against the first grantee and the remote grantee for cancellation of both deeds as clouds upon his title, and to have the title decreed to be in him.

"4. If the first grantee absents himself so that a tender cannot be made to him, a suit of the character mentioned in the preceding note may be maintained without a tender to the creditor in person, if the plaintiff offers to pay the money into court for him."

The refusal of Collateral Investment Company to accept any payment or to provide Louise Holmes with the correct "pay-off" of such loan is in reality no different than a grantee absenting himself so that a tender cannot be made. An inquiry by Coffey Enterprises Realty & Development Company, Inc. to Louise Holmes would have (1) disclosed such facts or (2) would have precluded her from making such contentions in the present litigation. The judgment of the trial court overruling the motion to dismiss for failure to state a claim was not error.

4. The notice of appeal in this case states that the hearing was not reported "so there will be no transcript of evidence, and it may be reviewed upon the facts and admissions set forth in the pleadings." The verified pleadings considered as evidence authorized the grant of the temporary injunction which required the plaintiff to make payment into the registry of the court until a final disposition of the case.

5. While the record contains other enumerations

of error, the above holding disposed of each issue made in the appeal.

*Judgment affirmed. All the Justices concur, except Gunter, J., who concurs specially.*

SUBMITTED JANUARY 27, 1975 — DECIDED MARCH 12, 1975.

*Thompson, Rubin & Charron,* for appellant.
*Holcomb & McDuff, Gregory S. Crone, Hansell, Post, Brandon & Dorsey, Lowell H. Hughen,* for appellees.

GUNTER, Justice, concurring specially.

Louise Holmes brought an action in the trial court against two defendants, Collateral Investment Company and Coffey Enterprises Realty & Development Company, Inc. Collateral had foreclosed a deed to secure debt to realty containing a power of sale, and Coffey was the purchaser of the realty at the foreclosure sale. The suit sought to set aside the foreclosure deed made to Coffey, and it sought to enjoin dispossessory proceedings instituted by Coffey against Louise Holmes in another court. The trial judge entered a temporary restraining order that halted the dispossessory proceedings, and he thereafter conducted a hearing on issues between Louise Holmes and Coffey. Coffey moved to dissolve the temporary restraining order and also moved to dismiss the Holmes complaint for failure to state a claim.

After the hearing the trial judge entered a judgment that granted a temporary injunction stopping the dispossessory proceedings and overruled the motion to dismiss the complaint for failure to state a claim.

Part of the interlocutory judgment appealed from reads: "Further ordered that under the facts in this case, and relying on the holding of the United States District Court for the Northern District of Georgia in the case of Law v. United States Department of Agriculture, that the constitutional right of due process is not waived by a subsequent purchaser who obtains the right of redemption and is not acquainted with this fact; . . . the order of this court denying the defendant, Coffey Enterprises Realty and Development Company, Inc.'s,

motion to dismiss as contained in its first defense is of such importance to the case that immediate review should be had, and it is hereby certified for immediate review pursuant to Ga. Code Ann. Sec. 6-701 (a) (2)."

Coffey has appealed and contends that its motion to dismiss should have been granted, and that it should have been allowed to proceed with the dispossessory action against Louise Holmes.

The facts, taken from the pleadings in the case, that led to this controversy were as follows: On June 26, 1954, James Brown conveyed the subject real estate to Collateral Investment Company by a deed to secure debt containing a power of sale; this security deed was properly recorded July 8, 1954; Louise Holmes acquired the subject real estate by a warranty deed from Bill Sudderth dated July 10, 1970 and properly recorded; the warranty deed to Louise Holmes did not contain a clause of debt assumption, and it did not contain any reference to the outstanding security deed to Collateral; however, Paragraph 7 of the complaint shows that Louise Holmes made payments to Collateral until approximately December of 1973; Collateral foreclosed under its security deed from Brown containing a power of sale and on June 4, 1974, executed and delivered as attorney-in-fact for James W. Brown a foreclosure deed to Coffey conveying the subject real estate in fee simple, "in as full and ample a manner as the said James W. Brown or his heirs and assigns did hold and enjoy the same"; Coffey, claiming title to the subject real estate by virtue of the foreclosure deed from James W. Brown by his attorney-in-fact, Collateral, brought a dispossessory action against Louise Holmes to oust her from the premises. Louise Holmes then brought her suit to prevent her being ousted and to set aside the foreclosure deed to Coffey.

It is my view that the judgment appealed from was correct and should be affirmed.

I.

The primary issue raised by the complaint and the motion to dismiss was the validity or invalidity of Coffey's foreclosure deed. If the foreclosure deed was not valid, Louise Holmes was entitled to have it canceled and also entitled to have the dispossessory action against her

stopped.

The validity or invalidity of the foreclosure deed is determined by the answer to the following question: Did the foreclosure under power of sale deprive Louise Holmes of her property without due process of law?

To answer this question it is necessary to examine the rather recent expansion of the concept of procedural due process, namely, the requirement of an opportunity for notice and a hearing prior to (and perhaps immediately after) the deprivation of a property right. See Sniadach v. Family Finance Corp., 395 U. S. 337 (1969); Fuentes v. Shevin, 407 U. S. 67 (1972); Mitchell v. W. T. Grant Co., 416 U. S. 600 (1974); and North Georgia Finishing, Inc. v. Di-Chem, Inc., —— U. S. —— (1975).

All property right deprivations are not governed by procedural due process requirements. The Fourteenth Amendment provides that none of the states shall deprive a person of his property without due process of law. The Georgia Due Process Clause means that no person shall be deprived, by or with the aid of the state, of his property without due process of law. Therefore, both the Federal Constitution and the Georgia Constitution mandate procedural due process requirements only when the government, State or Federal, is involved in some meaningful way with the deprivation. In short, if "state action" is not involved in the deprivation, procedural due process requirements are not applicable; and a property deprivation without accompanying "state action" is not violative of either Constitution.

It is therefore necessary to determine if "state action" was involved in the foreclosure procedure used in this case, because Coffey's title to and right to possession of the subject property depends upon the determination of this issue.

The case of Law v. United States Dept. of Agriculture, 336 FSupp. 1233 (N.D. Ga. 1974), referred to by the trial judge in his judgment, is not dispositive of the issue here. In Law it is clear that governmental action was involved, because a governmental agency had effected the deprivation.

In Ruff v. Lee, 230 Ga. 426 (197 SE2d 376) (1973), and in National Community Builders v. C. & S. Nat. Bank, 232

Ga. 594 (207 SE2d 510) (1974), we held that Georgia's foreclosure statutes were not facially unconstitutional. However, in those two cases it was not necessary to face, and we did not squarely confront, the "state action" issue. In Global Industries v. Harris, 376 FSupp. 1379 (N.D. Ga. 1974), Judge Moye held that the state had not sufficiently involved itself in the foreclosure proceedings. The foreclosure sale had been preliminarily enjoined pending the court's decision on the merits of the controversy. He held: "Consequently, this Court can only conclude that the plaintiff has failed to state a federal cause of action, and the complaint is therefore dismissed insofar as it seeks relief on constitutional grounds from the threatened foreclosure." P. 1384.

In the case at bar Louise Holmes asserts that she owns and occupies her property under a warranty deed from Bill Sudderth; that a predecessor in title to both her and Sudderth had given a security deed to Collateral that contained a power of sale; and that she did not have any knowledge of the terms and provisions of the security deed nor of the possible effect of a foreclosure pursuant to it.

The record shows that Louise Holmes has not signed any contract that would permit divestment of her property interest in and possession of the subject property, and she alleges that she has not knowingly, intelligently, and voluntarily waived her right to prior notice and a hearing before such a divestment.

There is no doubt about "state action" being involved in a dispossessory proceeding, and notice and a hearing are afforded in such proceedings. See Code Ann. Ch. 61-3. At such a hearing Louise Holmes of course would contend that she had title to the property and the right to possession of the property under her warranty deed, and that the foreclosure deed relied upon by the dispossessor was void. The dispossessor would contend that its deed was not void, because no "state action" was present in the foreclosure, and notice and a hearing for Louise Holmes were not required before the foreclosure sale. Coffey's argument in essence would be, as it is in this case, that the foreclosure proceeding amounted to no more than "self-help" (the Uniform Commercial Code analogy) with no state involvement and no requirement of prior notice

and a hearing. We thus see that the argument is that dispossession involving "state action" is predicated upon a divestment of a property right without "state action."

It is my view that Georgia's foreclosure scheme under powers of sale contained in deeds to secure debt involves "state action," and unless the owner of the property right being foreclosed has by contract waived his procedural due process rights in an intelligent, knowing and voluntary manner, divestment by foreclosure without notice and a hearing prior to the foreclosure sale is constitutionally prohibited.

Georgia's legislature has said that a security deed "shall be held by the courts to be an absolute conveyance, with the right reserved by the grantor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agreeably to the terms of the contract, and not a mortgage." Code § 67-1301. The foreclosure of mortgages on real property admittedly involves "state action." See Code Ch. 67-2. The legislature has also said that every security deed "shall be recorded in the county where the land conveyed lies," and the effect of failure to record a security deed is the same as a failure to record a deed of bargain and sale. Code § 67-1305. Another statute provides that the right of a grantor in a security deed to a reconveyence "shall be absolute and permanent upon his complying with his contract with the grantee according to the terms." Code Ann. § 67-1307. Another statute provides that no sale of real estate under powers contained in security deeds shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of sheriff's sales in the county in which the real estate, or a part thereof is located. Code Ann. § 67-1506. Other statutory provisions state specifically how sheriff's sales must be conducted. Code §§ 39-1101, 39-1102, and Code Ann. § 39-1201. The state has said in effect that the grantor and a grantee in a Georgia deed to secure debt can contract between themselves for divestment of the grantor's retained property right, but the exercise of such a contract effecting the divestment is precluded unless the sale is conducted as specified by the state.

A state statute also provides: "Every deed conveying

land shall be recorded in the office of the clerk of the superior court of the county where the land lies. The record may be made at any time, but such deed loses its priority over a subsequent recorded deed from the same vendor taken without notice of the existence of the first." Code § 29-401. It is elementary that the recording of a deed to real estate affords "constructive notice" to all parties claiming an interest in the property described in the recorded deed of the property interest owned by the grantee in the recorded deed.

It is my view that the recording statutes, the doctrine of "constructive notice," and the statutory limitations on divestment by foreclosure have involved the state in a meaningful way in all real estate transactions, and especially in divestments.

The question of "state action" should be answered by determining whether the alleged wrongdoer, Collateral in this case, was clothed with the authority of the state in effecting the divestment. In Hall v. Garson, 430 F2d 430, 439 (5th Cir. 1970) a landlady, not a state official, seized a television set. The Fifth Circuit held: "In this case the alleged wrongful conduct was admittedly perpetrated by a person who was not an officer of the state or an official of any state agency. But the action taken, the entry into another's home and the seizure of another's property, was an act that possesses many, if not all, of the characteristics of an act of the state. The execution of a lien, whether a traditional security interest or a quasi writ of attachment or judgment lien has in Texas traditionally been the function of the sheriff or constable. Thus, Article 5238a vests in the landlord and his agents authority that is normally exercised by the state and historically has been a state function."

The divestment of an interest in real estate, such as a mortgage foreclosure, has traditionally been a function of the state in this jurisdiction. And I cannot conclude that the divestment of a property interest in real estate through the exercise of a power of sale contained in a security deed is not "state action." Such a divestment of a real property interest in Georgia amounts to more than mere "self-help" under § 9-503 of the Uniform Commercial Code. See Adams v. Southern Cal. First Nat.

Bank, 492 F2d 324 (9th Cir. 1973); Brantley v. Union Bank &c. Co., 498 F2d 365 (5th Cir. 1974); James v. Pinnix, 495 F2d 206 (5th Cir. 1974); and, contra, Watson v. Branch County Bank, 380 FSupp. 945 (Mich. 1974).

Michigan's real estate foreclosure by advertisement statute has been held unconstitutional as applied in that it did not afford notice and a hearing prior to divestment. Garner v. Tri-State Development Co., 382 FSupp. 377 (E.D. Mich. 1974). A three-judge court in North Carolina has declared North Carolina's foreclosure procedure unconstitutional in that it deprives a mortgagor of procedural safeguards guaranteed by the Due Process Clause. That court found "state action" present in North Carolina's divestment procedure. Turner v. Blackburn, 43 USLW 2354 (decided Feb. 12, 1975).

The California Court of Appeals has held that California's deed of trust foreclosure procedure did not involve "state action." Strutt v. Ontario Savings &c. Assn., 11 Cal. App. 3d 547 (90 Cal. Rptr. 69) (1970). The United States Court of Appeals for the District of Columbia Circuit has upheld the constitutionality of the District of Columbia's extra-judicial mortgage foreclosure procedures, finding no significant governmental involvement. Bryant v. Jefferson Federal Savings &c. Assn., 509 F2d 511 (D.C. Cir. 1974).

Various divestment procedures (in the non-judicial category) in the different states involve varying degrees of participation by the government. I can only conclude that the state's participation in the Georgia foreclosure procedure is sufficient to constitute "state action"; and unless procedural due process requirements have been waived by the party whose property interest is being divested, notice and a hearing prior to divestment are constitutionally mandated.

II.

In the case at bar the record shows that Louise Holmes entered into no contract that would permit divestment of her property interest by the exercise of a power of sale; the record shows that there is no waiver of her constitutional due process rights; and her only notice of the possibility of divestment of her property interest by the exercise of a power of sale in favor of Collateral was

"with constructive notice" afforded by a security deed executed by her predecessor in title and recorded in 1954. The doctrine of "constructive notice" is a creature of the state; in this case the state has charged Louise Holmes with notice of the terms and conditions included in a recorded security deed; and more specifically the state has charged her with notice that her property right could be divested by the exercise of the power of sale without giving her notice and a hearing prior to the divestment. This alone, to me, amounts to "state action." It is my view that unless evidence can be presented to show that Louise Holmes waived her procedural due process rights, the foreclosure sale was constitutionally prohibited, it was a nullity to the extent of passing any title to Coffey, Coffey's foreclosure deed should be canceled, and Coffey is not entitled to oust Louise Holmes from possession through dispossessory proceedings.

For the reasons stated, I concur in the court's judgment affirming the judgment below.